620 A.2d 1125

PATRICK MEDIA GROUP, INC., Appellee,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant.

Supreme Court of Pennsylvania.

Submitted Dec. 7, 1992.

Decided Feb. 19, 1993.

Thomas R. Haist, John L. Heaton, and William J. Cressler, Harrisburg, for appellant.

Louis C. Long and Michael H. Syme, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal, by allowance, from an order of the Commonwealth Court, 142 Pa.Cmwlth. 359, 597 A.2d 274, which reversed an order of the Pennsylvania Department of Transportation (PennDOT), appellant herein, which had affirmed a hearing officer's denial of an application for a permit to place an outdoor advertising sign beside Interstate 279 in Ohio Township. The permit had been sought by Patrick Media Group, Inc. (Patrick), appellee.

The Outdoor Advertising Control Act of 1971 (OAC Act), 36 P.S. § 2718.101 et seq., prohibits the construction of outdoor advertising signs within six hundred sixty feet of the rights-of-way of interstate highways. The OAC Act contains an exception, however, allowing signs to be erected in commercially or industrially zoned areas within the boundaries of incorporated municipalities. In pertinent part, it provides:

> To effectively control outdoor advertising, while recognizing it to be a legitimate commercial use of property and an integral part of the business and marketing function, no outdoor advertising device shall be erected or maintained: (1) within six hundred sixty feet of the nearest edge of the right-of-way if any part of the advertising or informative contents is visible from the main-traveled way of an interstate or primary highway, except:
>
> . . . .
>
> (v) Outdoor advertising devices in areas zoned commercial or industrial along the interstate system and lying

within the boundaries of any *incorporated municipality* as such boundaries existed on September 21, 1959, and devices located in any other area which, as of September 21, 1959, was clearly established by law as industrial or commercial.

36 P.S. § 2718.104 (emphasis added).

The issue presented is whether Patrick's application to construct a sign in an industrially zoned area of a second class township, to wit, Ohio Township, falls within the foregoing exception allowing signs to be erected in an "incorporated municipality." The Commonwealth Court held that the exception was applicable on the basis that every square inch of property within the Commonwealth is located within incorporated municipalities. Holding that all such lands are located within incorporated municipalities is, however, to render meaningless much of the language in the statutory exception set forth in 36 P.S. § 2718.104(v), supra. Since all lands in commercially or industrially zoned areas can then qualify as locations for outdoor advertising signs, no restrictive effect is thereby accorded the proviso that lands be "within the boundaries of any incorporated municipality as such boundaries existed on September 21, 1959. . . ." The Commonwealth Court expressly held this proviso to be merely "harmless surplusage." We do not agree.

The Statutory Construction Act of 1972 provides that, "Every statute shall be construed, if possible, to give effect to *all* its provisions." 1 Pa.C.S. § 1921(a) (emphasis added). The provision that land to be used for the placement of advertising signs must be located within the bounds of an incorporated municipality is to no extent surplus language. Indeed, it could only be deemed surplusage if, as the Commonwealth Court held, all lands within the Commonwealth are regarded as being within incorporated municipalities. Unfortunately, the OAC Act contains no definition of the term, "incorporated municipality."

PennDOT contends that the terms "incorporated municipality" and "municipal corporation" refer interchangeably to the same entities. The Statutory Construction Act of 1972 con-

tains a clear definition of the term "municipal corporation," and, thereunder, it is clear that not all lands are located within municipal corporations. The following definition is supplied:

**"Municipal corporation."**

(1) When used in any statute finally enacted on or before December 31, 1974, a city, borough or incorporated town.

(2) When used in any statute finally enacted on or after January 1, 1975, a city, borough, incorporated town or township.

1 Pa.C.S. § 1991.

The OAC Act was enacted on December 15, 1971. Hence, reference can be made to the definition of "municipal corporation" set forth in paragraph (1), supra, pertaining to statutes enacted before December 31, 1974. That definition includes cities, boroughs, and incorporated towns. It does not include townships.

Although the OAC Act was amended in December of 1975, the amendments did not change the provision presently at issue, to wit, the exception allowing signs to be erected in incorporated municipalities. The fact that the statute was amended in 1975 does not cause paragraph (2), supra, of the definition of "municipal corporation" to become operative. Paragraph (2), unlike paragraph (1), defines municipal corporations as including townships. The Statutory Construction Act of 1972 provides that, when a statute has been amended, the unaltered portions of the original statute are to be construed as effective from the date of their original enactment:

[P]ortions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective.

1 Pa.C.S. § 1953. Thus, PennDOT asserts that, in construing the OAC Act provision in question, reference should be made to the statutory definition of municipal corporation applicable to statutes enacted before December 31, 1974. Under that definition, townships are not municipal corporations. Penn-

DOT argues that they should therefore not be regarded as incorporated municipalities.

■ Notwithstanding PennDOT's argument and the fact that Patrick has not offered any counter-argument as to the interchangeability of the terms "municipal corporation" and "incorporated municipality," it is, perhaps, not self-evident that the terms in question are identical in meaning. Nevertheless, it has long been recognized that townships exercise powers that are quasi-corporate in character. See *Trevorton Water Supply Co. v. Zerbe Township,* 259 Pa. 31, 35, 102 A. 328, 329 (1917). The Commonwealth Court, in holding that townships are incorporated municipalities, focused upon townships' powers to impose taxes, enact ordinances, file suits, convey property, enter contracts, etc. as evidence of their "corporate" existence.

■ Nevertheless, it is clear that under the definition of the term "municipality" set forth in the Statutory Construction Act of 1972, a township does not qualify as a municipality for purposes of the OAC Act. The following definition is provided:

"**Municipality.**"

(1) When used in any statute finally enacted on or before December 31, 1974, a city, borough or incorporated town.

(2) When used in any statute finally enacted on or after January 1, 1975, a county, city, borough, incorporated town or township.

1 Pa.C.S. § 1991. Inasmuch as the OAC Act was enacted prior to December 31, 1974, the definition set forth in paragraph (1) is operative. Since townships are not to be regarded as municipalities, it follows that, despite their exercise of certain powers that are quasi-corporate in nature, townships are not incorporated municipalities.* Hence, the statutory

---

* We note that certain other acts contain definitions of the term "municipality," such definitions being expressly applicable only to the construction of such acts, and that the definitions in some instances encompass townships and other entities excluded from the definition set forth in the Statutory Construction Act of 1972, supra. See Municipality Authorities Act of 1945, 53 P.S. § 302(f); Home Rule Charter and Option-

provision allowing advertising signs to be erected in incorporated municipalities is not applicable to townships.

This result is consistent with the legislative intent surrounding enactment of the OAC Act. See 1 Pa.C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). The OAC Act was a legislative response to the Federal Highway Beautification Act of 1965 (Federal Act), 23 U.S.C. § 131 et seq. The Federal Act was intended to protect the public investment in the interstate and primary highway system, to promote the safety and recreational value of public travel, and to preserve our nation's natural beauty. 23 U.S.C. § 131(a). It provided the Secretary of Transportation with authority to reduce by ten percent the amount of federal-aid highway funds being allocated to states that have not limited the construction of advertising signs within six hundred sixty feet of the rights-of-way of interstate and primary highways. 23 U.S.C. § 131(b). The OAC Act was intended by our legislature to protect the Commonwealth's interest in receiving federal-aid funds, and, at the same time, to further the national policy of highway beautification. Its goal was to limit the proliferation of advertising signs alongside our highways. See 36 P.S. § 2718.102 (purposes of the Act). The decision of the Commonwealth Court, which so broadly construed the exception allowing the construction of signs in incorporated municipalities, and, further, which erroneously deemed a major portion of the restrictive language in the exception to be mere surplusage, clearly undermined the legislative intent. The order of the Commonwealth Court must, therefore, be reversed.

Order reversed.

al Plans Law, 53 P.S. § 1–102. The OAC Act is not, however, a part of such acts. The definition applicable to the present case is, therefore, the one set forth in the Statutory Construction Act of 1972.