**HIGHWAY NEWS, INC., Petitioner,**

**v.**

**PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 6, 2001.

Decided Jan. 4, 2002.

---

Carl Max Janavitz and Warner Mariani, Pittsburgh, for petitioner.

Chester J. Karas, Jr., Pittsburgh, for respondent.

Before SMITH, Judge, KELLEY, Judge,[1] and JIULIANTE, Senior Judge.

KELLEY, Judge.

Highway News, Inc. petitions for review of the order of the Secretary of Transportation (Secretary) denying its exceptions to a hearing officer's proposed report, and making final a Hearing Officer's order affirming the Pennsylvania Department of Transportation's (DOT) final notice of February 4, 2000 to remove Illegal Sign No. X12–1733 under the provisions of the Outdoor Advertising Control Act of 1971(Act)[2] and the regulations promulgated thereunder by the Secretary.[3] We vacate and remand.

---

1. The decision in this case was reached prior to the date that Judge Kelley assumed the status of senior judge on December 31, 2001.

2. Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. §§ 2718.101—2718.115. In particular, Section 10 of the Act states, in pertinent part:

> In addition to the penalties prescribed in this act, the secretary may institute an appropriate action or proceeding after thirty days' written notice of a violation to the person or persons maintaining or allowing to be maintained such device, to prevent, restrain, correct or abate a violation or to cause the removal of any advertising device erected or maintained in violation of the provisions of this act, or the secretary may have any such device corrected or removed by his employes. . . .

36 P.S. § 2718.110.

3. *See* 67 Pa.Code §§ 445.1—445.9. The authority of the Secretary to promulgate these regulations is found in Section 6 of the Act which states, in pertinent part:

> The secretary is authorized to promulgate rules and regulations governing outdoor advertising devices and such rules and regulations shall contain the criteria set forth under section 5 of this act and shall contain

Highway News is the lessee of two parcels of property, 8 McIlvaine Road and 9 McIlvaine Road, located adjacent to the Kemmerer Interchange of Interstate Route 70 in Somerset Township, Washington County, Pennsylvania. The lots are directly across, and separated by, McIlvaine Road. For a number of years prior to 1997, Highway News operated an adult bookstore on the property at 8 McIlvaine Road. In July of 1997, Highway News relocated the store to the property at 9 McIlvaine Road, and the building located

at 8 McIlvaine Road was subsequently razed.[4]

Highway News maintains a sign on the parcel at 8 McIlvaine Road advertising its business. Highway News had previously obtained the necessary permits for the sign from DOT and Somerset Township as an on-premise sign.[5]

On February 4, 2000, a DOT District Engineer mailed Highway News a Final Notice to Remove Illegal or Abandoned Sign.[6] In the notice, DOT's District Engi-

---

the permit provisions set forth under section 7 of this act....

36 P.S. § 2718.106.

4. On February 8, 1999, Highway News entered into a settlement agreement with Somerset Township in which it was agreed, *inter alia,* that: the building at 8 McIlvaine Road will be torn down and the vacant lot will be used for parking purposes relative to the business conducted at 9 McIlvaine Road; Highway News will discuss with Township officials the use of the vacant lot for parking to address grading to prevent damage to adjacent roads, the installation of security lighting, and the application of a durable surface and parking line markings; the vacant lot shall be used for parking so long as Highway News exists and/or does business at the location; and the current sign on the vacant lot will remain in place and continue to be used.

5. Section 445.5 of DOT's regulations states, in pertinent part:

§ 445.5. On-premise signs.

(a) *Application.* This section applies to signs which:

(1) Advertise the sale or lease of the premises on which they are located.

(2) Advertise activities conducted on the premises on which they are located....

67 Pa.Code § 445.5(a).

In turn, Section 445.2 of DOT's regulations defines "premises", in pertinent part, as follows:

*Premises*—The property upon which the activity is conducted as determined by physical facts rather than property lines. It is the land occupied by the buildings or other physical uses that are necessary or customarily incident to the activity, including such open spaces as are arranged and

designed to be used in connection with the buildings or uses. The following are not considered to be a part of the premises on which the activity is conducted, and any signs located on the land are to be considered off-premise advertising:

(i) Land which is not used as an integral part of the principal activity, including land which is separated from the activity by a roadway, highway or other obstruction, and not used by the activity ...

* * *

(iii) Land which is more than 100 feet from the principal activity, and in closer proximity to the highway than to the principal activity, and developed or used only in the area of the sign site or between the sign site and the principal activity and whose purpose is for advertising purposes only....

67 Pa.Code § 445.2.

6. *Section 206 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, as amended,* 71 P.S. § 66 states, in pertinent part:

Each administrative department shall have as its head an officer who shall, either personally, by deputy, or by the duly authorized agent or employe of the department, and subject at all times to the provisions of this act, exercise the powers and perform the duties by law vested in and imposed upon the department.

The following officers shall be the heads of the administrative departments following their respective titles:

* * *

Secretary of Transportation, of the Department of Transportation....

neer stated, *inter alia*, that at one time the sign was considered to be an on-premise sign. However, because the business was moved across McIlvaine Road, DOT considered the sign to be reclassified as an off-premise sign for which Highway News had not obtained a permit. As a result, DOT's District Engineer requested that the sign be removed within 30 days.

On March 13, 2000, Highway News filed an appeal of the notice with DOT's administrative clerk.[7] On May 25, 2000, a hearing was conducted before an administrative Hearing Officer.[8]

At the hearing, in support of its position that this sign is no longer an on-premise sign, DOT cited its long standing interpretation of Section 445.2 that an on-premise sign must be: located on land used as an integral part of the principal activity; located within 100 feet of the principal activity; and not be separated from the principal activity by a roadway. Because DOT interpreted "principal activity" to mean the building in which Highway News conducts its business, the relocation of the business across McIlvaine Road caused DOT to change the classification of the sign from an on-premise to an off-premise sign.

DOT also asserted that the agreement between Highway News and Somerset Township, in which Highway News was to improve the vacant lot into a parking facility, was irrelevant to the proceedings. DOT submitted that it could only consider the physical facts as of the date it issued the notice to remove, and that Highway News had not improved the lot prior to the date that it issued the notice.

Finally, DOT asserted that the vacant lot exhibited no physical characteristics which suggested that it is connected to Highway News' retail business, truckers continue to be cited for parking on the shoulder of the nearby roads, and they only infrequently park in the vacant lot. DOT argued that this supported the conclusion that the patrons of Highway News' business do not associate the vacant lot as being connected with the building or principal activity across McIlvaine Road.

In opposition to the notice to remove, Highway News asserted that the sign on the vacant lot continues to qualify as an on-premise sign. In support, Highway News argued that the unimproved lot at 8 McIlvaine Road is, in fact, a parking facility. As a result, this lot should be considered a use customary or necessary to the retail sales at 9 McIlvaine Road and, therefore, meets the definition of an on-premise sign under the provisions of Section 445.2 of the regulations.

On November 17, 2000, the Hearing Of-

---

7.  With respect to such appeals, Section 491.1 of the regulations states, in pertinent part:

   This chapter supplements and supersedes inconsistent provisions in the General Rules [of Administrative Practice and Procedure, 1 Pa.Code §§ 31.1—35.251 (General Rules)].

   \* \* \*

   (2) To the extent this chapter does not supplement nor supersede the General Rules, the General Rules apply will apply to activities and proceedings before the Department.
   67 Pa.Code § 491.1.

8.  Section 491.2a of the regulations states, in pertinent part:

   (a) *Separation of adjudicatory function.* The adjudicatory function performed in accordance with this chapter and the General Rules will be separated from the function of representing the Department in administrative hearing matters. This chapter prescribes that an administrative hearing officer will preside over any hearing and, if exceptions are filed by any party, the decision ultimately is made by the Secretary. . . .
   67 Pa.Code § 491.2a(a).

ficer issued a Proposed Report[9] in which he made the following relevant findings of fact:

6. On or about July, 1997, Highway News' retail store relocated from the lot located at 8 McIlvaine Road to a lot located at 9 McIlvaine Road, and the original store was torn down. . . .

7. The subject sign remains erected at News' previous business location, at 8 McIlvaine Road, and is separated from Highway News' current building location by McIlvaine Road.

8. The subject sign currently stands more than 100 feet from the principal activity, and is situated on a vacant, unpaved and unmarked lot.

9. The subject sign originally qualified as an "on-premise" sign, under [DOT]'s interpretation of 67 Pa.Code § 445.2.

10. [DOT] changed the classification of this sign from "on-premise" to "off-premise" when the building containing the principal activity was moved across to the other side of McIlvaine Road.

11. In its notice to remove dated February 2, 2000, [DOT], inter alia, stated the reason for the notice to remove the illegal sign was that "at one time the sign was considered an on-premise sign, but since the activity was moved across the street, the sign is reclassified as an off-premise sign and must follow those rules."

12. This previous "on-premise" sign is now located beyond 100 feet from the principal activity, and is separated from the principal activity by a roadway (McIlvaine Road).

13. In February, 1999, a "settlement agreement" between Highway News and Somerset Township, inter alia, directed Highway News to transform the vacant lot at 8 McIlvaine Road into a parking facility by paving the lot, adding parking line markings and security lighting, but did not indicate when such work must be completed.

14. As of February 4, 2000, the date on which [DOT] mailed notice to Highway News instructing them to remove the sign at issue, the vacant lot remained unpaved, without parking lines, and absent security lighting.

15. Highway News had not applied for an "off-premise" sign permit.

Proposed Report at 2–4.

In ruling on the merits of Highway News' appeal, the Hearing Officer stated the following, in pertinent part:

[S]ection 2718.102 of the Act, 36 P.S. § 2718.102, provides, in pertinent part, that the purpose of the Act is to preserve natural beauty, and declares it ". . . .to be in the public interest to control the erection and maintenance of outdoor advertising devices in areas adjacent to the interstate and primary systems within this Commonwealth." Given this clear intent of the Act, which is to protect the Commonwealth's interest in receiving Federal Aid funds, and, to

---

**9.** Section 491.11 of the regulations states, in pertinent part:

(a) *General.* Following the hearing and the timely submission of any post-hearing filings, the Department hearing officer will prepare and file a proposed report with the docket clerk.

(b) *Contents.* The proposed report shall contain:

(1) *Findings of fact.*

(2) A discussion of the applicable law and relevant evidence of record.

(3) Conclusions of law.

(4) An order.

\* \* \*

(d) *Supplementation.* This section supplements 1 Pa.Code §§ 35.201—35.207 (relating to proposed reports generally).

67 Pa.Code § 491.11(a), (b), (d).

further the national policy of highway beautification, the final goal of the Act was to "limit the proliferation of advertising signs along our highways." *Patrick Media Group, Inc. v. Department of Transportation*, 533 Pa. 188, 620 A.2d 1125 (1993). The Act, clearly, is meant to restrict the erection of outdoor advertising devices, and [DOT]'s interpretation [of Section 445.2] is entirely consistent with that purpose. Indeed, if we were to accept Highway News' interpretation .... we could be invalidating the stated purpose of the Act. Highway News has not shown that [DOT]'s interpretation is erroneous. It merely offers an alternative interpretation, which flies in the face of the clear intent of the Act. [DOT]'s argument is sound. Given the intent of the Act, it is reasonable that an "on-premise" sign must be on the actual premises of the business it advertises, and may not be separated by a road. If the sign *is* separated by a road, then a permit for an "off-premise" sign is needed, because it has ceased to be an "on-premise" sign.

*Id.* at 9–10.

Based on the foregoing, the Hearing Officer concluded that the sign ceased to be an on-premise sign when Highway News relocated its operations to 9 McIlvaine Road, and it was, therefore, an illegal sign subject to removal. *Id.* at 10–11. As a result, the Hearing Officer issued an order affirming DOT's notice requiring the removal of the sign. *Id.* at 11.

■ On December 15, 2000, Highway News filed exceptions to the Hearing Officer's Proposed Report with DOT's administrative docket clerk.[10] On December 26, 2000, DOT filed a reply to Highway News' exceptions. On January 16, 2001, the Secretary issued an order denying Highway News' exceptions, and making final the order contained in the Hearing Officer's Proposed Report.[11] Highway News then filed the instant petition for review in this Court.[12]

10. Section 491.12·of the regulations states, in pertinent part:

(a) *Filing.* A party desiring to appeal to the Secretary may file exceptions to the proposed report within 30 days after the mailing date of the proposed report by the docket clerk.

\* \* \*

(d) *Waiver.* If no party files exceptions to the proposed report within the time prescribed in subsection (a), those persons shall be deemed to have irrevocably waived objections to the proposed report, and the proposed report will be deemed approved by the Secretary.

(e) *Supplementation.* This section supplements 1 Pa.Code §§ 35.211—35.214 (relating to exceptions to proposed reports).

67 Pa.Code § 491.12(a), (d), (e).

11. Section 35.226 of the General Rules states, in pertinent part:

(a) Adjudications of an agency head shall be final orders, subject only to application for rehearing, if any, provided for by the statute under which the proceeding is initiated and conducted.... Final orders shall include:

\* \* \*

(2) Adjudications by the agency head upon appeal of proposed reports by participants, by filing exceptions in the manner and time provided by § 35.211 (relating to procedure to except to proposed report), or upon review initiated by the agency head within 10 days next following the expiration of the time for filing exceptions under the section, or another time as the agency head may fix in specific cases....

1 Pa.Code § 35.226(a)(2). In turn, Section 31.3 of the General Rules defines "agency head", in pertinent part, as "[t]he secretary of a department...." 1 Pa.Code § 31.3.

12. This Court's scope of review of a determination by the Secretary under the Act is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law has been committed or whether constitutional rights have been violated. *Philadelphia Outdoor Advertising v. Department of Transportation*, 690 A.2d 789 (Pa.Cmwlth.1997).

The sole claim raised by Highway News in this appeal is that the Secretary erred in dismissing its exceptions and affirming the Hearing Officer's order requiring removal of the sign located at 8 McIlvaine Road because the sign qualifies as an on-premise sign pursuant to Section 445.2 of the regulations. In particular, Highway News asserts that the Secretary and the Hearing Officer erred in adopting DOT's erroneous interpretation of Section 445.2 in determining that the sign was no longer an on-premise sign and, therefore, subject to removal.

■ We initially note that an agency's interpretation of its regulatory statute must be given considerable weight and deference by a reviewing court. *Martin Media v. Department of Transportation*, 700 A.2d 563 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 555 Pa. 736, 725 A.2d 184 (1998). Thus, an agency's interpretation of its regulations is controlling unless: (1) the interpretation is plainly erroneous or inconsistent with the regulation or statute; or (2) the regulation is inconsistent with the statute under which it was promulgated. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Benny Enterprises, Inc.*, 669 A.2d 1018 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 545 Pa. 672, 681 A.2d 1344 (1996); *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia*, 139 Pa.Cmwlth. 256, 590 A.2d 384 (1991), *appeal quashed*, 534 Pa. 301, 632 A.2d 873 (1993).

■ In addition, it is well settled that the rules of statutory construction apply to regulations as well as to statutes. *Pennsylvania State Police, Bureau of Liquor Control Enforcement; Fraternal Order of Police Lodge No. 5; Smith v. Mitchell*, 420 Pa.Super. 137, 616 A.2d 17 (1992). Thus, every regulation should be construed, if possible, to give effect to all of its provi-

sions, and each word in a regulation is to be given meaning and not treated as surplusage. Section 1921(a) and (b) of the Statutory Construction Act, 1 Pa.C.S. § 1921(a), (b); *Smith*. Moreover, if the words of a regulation are clear and free from ambiguity, the letter of the regulation may not be disregarded under the pretext of pursuing its spirit. Section 1921(b) of the Statutory Construction Act, 1 Pa.C.S. § 1921(b); *Fraternal Order of Police Lodge No. 5*. Finally, an agency's invalid yet unchallenged interpretation of a regulation does not gain validity over time. *Id.*

In the Proposed Report, the Hearing Officer stated the following, in pertinent part:

In support of its position that this sign is no longer an on-premise sign, [DOT] cites its long standing interpretation of the above section that an "on-premise" sign must be: one located on land used as an integral part of the principal activity; a sign located within 100 feet of the principal activity; and, a sign not separated from the principal activity by a roadway.... It states that the 1997 relocation of the business across McIlvaine Road caused [DOT] to change the classification from an "on-premise" to an "off-premise" sign because: McIlvaine Road now separates the building from the vacant piece of land on which the sign currently [stands]; the sign in question is presently located on a parcel of land which is separated from the principal activity by a roadway; and, the sign in question is now located more than 100 feet from the building [at 9 McIlvaine Road], which is the principal activity.

Proposed Report at 6–7. The Hearing Officer adopted DOT's interpretation of Section 445.2 in affirming DOT's notice to remove. *Id.* at 9–10. The Secretary also implicitly adopted DOT's interpretation of

Section 445.2 in issuing the order dismissing Highway News' exceptions and making final the Hearing Officer's order.

■ However, as noted above, Section 445.2 of the regulations defines "premises", in pertinent part, as "[t]he land occupied by the buildings *or other physical uses that are necessary or customarily incident to the activity,* including such open spaces as are arranged and designed to be used in connection with the buildings or uses...." 67 Pa.Code § 445.2 (emphasis added). Section 445.2 also provides that land which is not considered to be part of the "premises" is "[l]and which is not used as an integral part of the principal activity, including land which is separated from the activity by a roadway .... *and not used by the activity...." Id.* (emphasis added). Likewise, land which is also not considered to be part of the "premises" is "[l]and which is more than 100 feet from the principal activity .... *and whose purpose is for advertising purposes only...." Id.* (emphasis added).

Thus, the mere fact that the property at 8 McIlvaine Road is separated from the building housing Highway News' retail business at 9 McIlvaine Road by a roadway, or by more than 100 feet, does not necessarily mean that it cannot be part of the "premises" under the provisions of Section 445.2. Rather, if the lot at 8 McIlvaine Road, whether improved or unimproved, is used as parking by the patrons of the building housing Highway News' retail business at 9 McIlvaine Road, this lot is part of the "premises" under Section 445.2 and the sign continues to qualify as an on-premise sign.

DOT's interpretation to the contrary, which fails to give effect to the foregoing italicized language, is clearly erroneous and inconsistent with all of the express provisions of Section 445.2. As a result, DOT's interpretation of Section 445.2 is

not binding on this Court. *Pennsylvania State Police, Bureau of Liquor Control Enforcement; Fraternal Order of Police Lodge No. 5.* Moreover, because the Hearing Officer and the Secretary adopted this erroneous interpretation, we must vacate the order of the Secretary dismissing Highway News' exceptions and making the Hearing Officer's order final.

As indicated above if the lot at 8 McIlvaine Road, whether improved or unimproved, is used as parking by the patrons of the building housing Highway News' retail business at 9 McIlvaine Road, this lot is part of the "premises" under Section 445.2 and the sign continues to qualify as an on-premise sign. In the Proposed Report, the Hearing Officer summarized the evidence regarding the use of the lot at 8 McIlvaine Road as follows:

> [DOT] further contends that because it can only consider the physical facts as of the date of the issuance of the revocation notice, the February 8, 1999 stipulation between Highway News and Somerset Township, which indicates that Highway News was to physically transform the vacant lot into a parking facility, is irrelevant to the proceeding. It points out that in spite of Highway News' intent to pave the vacant lot and add parking lines, the vacant lot was in fact void of all such physical characteristics typically associated with a parking facility as of the date [DOT] mailed the revocation notice. Also, [DOT] points out that the lot containing the sign exhibits no physical characteristics, such as parking lines, signs or paving, which suggested it is connected to Highway News' retail business. It also cites the fact that truckers continue to park on the shoulders of respective roads and receive citations therefore, and apparently only infrequently park in this lot, evidences the fact that truckers do not

normally associate this vacant lot in question as being connected with the Highway News building or principal activity across the road.

Highway News, on the other hand, argues that under its interpretation of the above regulations, the subject sign does in fact qualify as "on-premise". It contends that the area on the old location is in fact a valid parking facility and should be considered a physical use of the land customary or necessary to this activity involving retail sales to customers traveling the highway.

Proposed Report at 7–8.

∎ However, neither the Secretary nor the Hearing Officer made a specific finding of fact regarding whether or not the lot at 8 McIlvaine Road, whether improved or not, is used for parking by the patrons of Highway News' business at 9 McIlvaine Road. Because this finding of fact is dispositive as to whether the sign at 8 McIlvaine Road continues to be an on-premise sign under Section 445.2 of the regulations, this matter must be remanded to the Secretary, the ultimate finder of fact [13] in proceedings under the Act. *Page's Department Store v. Velardi,* 464 Pa. 276, 346 A.2d 556 (1975); *Reed v. Unemployment Compensation Board of Review,* 104 Pa. Cmwlth. 373, 522 A.2d 121 (1987); *Danner v. Bristol Township Civil Service Commission,* 64 Pa.Cmwlth. 470, 440 A.2d 702 (1982); *Beard v. Department of Public Welfare,* 42 Pa.Cmwlth. 393, 400 A.2d 1342 (1979).

Accordingly, the order of the Secretary is vacated, and the matter is remanded to the Secretary for proceedings consistent with this opinion.

### ORDER

AND NOW, this *4th* day of *January,* 2002, the order of the Secretary of the Pennsylvania Department of Transportation, dated January 16, 2001 at No. 004 A.D. 2000, is vacated and the case is remanded to the Secretary of the Pennsylvania Department of Transportation for proceedings consistent with this opinion.

Jurisdiction is relinquished.

---

**13.** As noted above, under the various provisions of the Act, the Administrative Agency Law of 1929, the regulations and the General Rules, the Hearing Examiner is only the designee of the Secretary, and the Secretary is the ultimate authority who takes the final agency action which is subject to appeal to this Court. As a result, the Secretary is the ultimate finder of fact in the instant matter. *Siemon's Lakeview Manor Estate v. Department of Public Welfare,* 703 A.2d 551 (Pa. Cmwlth.1997), *petition for allowance of appeal denied,* 556 Pa. 681, 727 A.2d 134 (1998); *Dowler v. Public School Employes' Retirement Board,* 153 Pa.Cmwlth. 109, 620 A.2d 639 (1993); *Leonard S. Fiore, Inc. v. Department of Labor and Industry,* 129 Pa.Cmwlth. 583, 566 A.2d 632 (1989), *rev'd on other grounds,* 526 Pa. 282, 585 A.2d 994 (1991); *Pennsylvania State Police v. Pennsylvania Human Relations Commission,* 127 Pa.Cmwlth. 436, 561 A.2d 1320 (1989); *McDermond v. Foster,* 127 Pa.Cmwlth. 151, 561 A.2d 70 (1989); *Bucks County Public Schools v. Department of Education,* 108 Pa.Cmwlth. 511, 529 A.2d 1201 (1987), *petition for allowance of appeal denied,* 517 Pa. 624, 538 A.2d 877 (1988); *Fitz v. Intermediate Unit #29,* 43 Pa.Cmwlth. 370, 403 A.2d 138 (1979). *See also Realmuto v. Department of Transportation,* 161 Pa.Cmwlth. 613, 637 A.2d 769 (1994) (In proceedings on a petition for the restoration of driving privileges and the recomputation of a period of suspension, the Secretary is not bound by the proposed report of the Hearing Examiner as the ultimate finder of fact, and is free to accept or reject all or part of a witness' testimony.). *But cf. Mike's Sign Company v. Department of Transportation,* 164 Pa.Cmwlth. 292, 642 A.2d 634 (1994) (In a hearing on the revocation of a permit for a nonconforming outdoor advertising device, the Hearing Officer may believe all, part, or none of an expert witness' testimony.).