# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Saturday Family LP,        :
        Petitioner    :
             :
    v.          :  No. 781 F.R. 2013
             :  Submitted: June 7, 2017
Commonwealth of Pennsylvania,   :
        Respondent  :


Techspec Inc.,         :
        Petitioner    :
             :
    v.          :  No. 782 F.R. 2013
             :  Submitted: June 7, 2017
Commonwealth of Pennsylvania,   :
        Respondent  :


BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
      HONORABLE ROBERT SIMPSON, Judge
      HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE ANNE E. COVEY, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE JOSEPH M. COSGROVE, Judge


**OPINION BY JUDGE BROBSON**      **FILED: August 14, 2017**


Pursuant to Pennsylvania Rule of Appellate Procedure 1571(i), the Commonwealth of Pennsylvania (Commonwealth) filed exceptions to this Court's three-judge panel opinion and order in *Saturday Family LP v. Commonwealth of Pennsylvania*, 148 A.3d 931 (Pa. Cmwlth. 2016) (*Saturday Family I*), dated October 17, 2016, in which the Court reversed an order of the Board of Finance and Revenue (Board), dated September 25, 2013 (mailed on September 27, 2013). In so doing, we concluded that the Commonwealth was bound by the clear terms of

its own regulation and could not impose realty transfer tax on a ground lease with a less than thirty-year initial term but with a renewal option at fair market value (FMV) rent. Upon careful review, we overrule the Commonwealth's exceptions.

Generally speaking,[1] a lease for real property for a term of thirty years or more is subject to Pennsylvania's realty transfer tax. Section 1103-C.1 of the Tax Code[2] provides that "[i]n determining the term of a lease, it shall be presumed that a right or option to renew or extend a lease will be exercised if the rental charge to the lessee is fixed *or if a method for calculating the rental charge is established*." (Emphasis added.) Under its rulemaking authority,[3] the Department of Revenue (Department) promulgated a regulation to aid, *inter alia*, in its enforcement of Section 1103-C.1 of the Code. With respect to leases and lease extensions, the Department's regulation provides, in relevant part:

> In determining the term of a lease under this paragraph, it shall be presumed that a right or option to renew or extend a lease will be exercised if the lessor and lessee cannot renegotiate the rental charges for the renewal or extension period unconditionally. A lessor and lessee cannot renegotiate a rental charge unconditionally if it is fixed at a set amount for the period or a method for establishing the rental charges is established. *Renewals or extensions at the option of the lessee at fair rental value at the time of the renewal or extension are not included in determining the term of a lease.*

---

[1] A more detailed discussion of the statutory framework is set forth in the panel's decision in *Saturday Family I*.

[2] Act of March 4, 1971, P.L. 6, added by the Act of July 2, 1986, P.L. 318, 72 P.S. § 8103-C.1.

[3] Section 1107-C of the Tax Code, Act of March 4, 1971, P.L. 6, added by the Act of May 5, 1981, P.L. 36, 72 P.S. § 8107-C.

61 Pa. Code § 91.193(b)(24)(v) (emphasis added).

In *Saturday Family I*, the Court examined the terms of the ground lease between Petitioners Saturday Family LP, as landlord, and Techspec Inc., as tenant, (collectively Taxpayers) for the lease of property located at 718 Y Street, Derry Township, Westmoreland County, Pennsylvania (Ground Lease). Specifically, the Ground Lease provides for an initial term of 29 years and 11 months (and 3 days).[4] The Ground Lease provides the tenant with the option to renew the term for up to 6 periods of 5 years each for FMV rent as determined by the parties at the time of the extension based on rents for similar parcels in Westmoreland County and, if they are unable to agree, by appraisal. Applying both the governing statute and the Department's regulation, the Court held that because the Ground Lease expressly provided the lessee with the option to renew the Ground Lease at expiration for an additional 5-year term at FMV rent at the time of renewal, the term of the extension should not be included in the lease term. Accordingly, the Ground Lease, which was for a term of less than 30 years, is not subject to the realty transfer tax.

The Commonwealth takes exception in a brief that largely tracks the arguments set forth in its original merits brief. In its first exception, the Commonwealth initially challenges not this Court's decision but an alleged failure by Taxpayers "to claim a valid exemption from [r]ealty [t]ransfer [t]axes."

---

[4] The Commonwealth notes in its brief in support of its exceptions that the Court in *Saturday Family I* omitted the 3 days from the initial term in its opinion. The Commonwealth, however, does not indicate that this omission (or rounding in the interest of brevity) had any relevance to the panel's analysis or even the Court's consideration of the Commonwealth's exceptions. Nonetheless, we now include the three days.

3

(Cmwlth. Br. on Exceptions at 14.)  The Commonwealth relies on instances in the record and in Taxpayers' initial brief to the Court where Taxpayers refer to a nonexistent provision in the Tax Code, specifically "72 P.S. § 8102-C.3(24)." Although "72 P.S. § 8102-C.3" exists,[5] it does not contain a subsection (24).

We acknowledge those citation errors but do not view them as fatal. Taxpayers have consistently argued that because the Ground Lease has a renewal option at FMV rent, the renewal period should not be included for realty transfer tax purposes.  In their initial brief, for example, Taxpayers include the following in their Statement of the Case:  "Renewal options at fair market value are not counted toward the 30-year lease term test for [t]ransfer [t]ax purposes. 72 P.S. § 8102-C.3(24)."  (Taxpayers' Initial Br. at 3.)  This statutory cite is an obvious error, apparent from a reading of Taxpayers' argument section, where Taxpayers cite specifically to the Department's regulation to support this proposition.[6]  We note that the Commonwealth does not profess to be deceived or otherwise prejudiced by the citation errors.  Rather, it merely seeks to take advantage of them.  Like the Commonwealth, however, the Court was clearly able to discern the legal basis for Taxpayers' appeal notwithstanding some errant citations.  Accordingly, this particular exception does not compel the Court to rule in the Commonwealth's favor.

---

[5] Section 1102-C.3 of the Tax Code, Act of March 4, 1971, P.L. 6, added by the Act of July 2, 1986, P.L. 318, *as amended*, 72 P.S. § 8102-C.3.  This section of the Tax Code excludes certain enumerated transactions from imposition of the realty transfer tax.

[6] We note that although there is no subsection (24) in Section 1102-C.3 of the Tax Code, the Department's regulation specifically dealing with how to treat lease extensions for the purpose of realty transfer tax is found at 61 Pa. Code § 91.193(b)*(24)*(v).  This could explain the occasional citation errors by Taxpayers.

The balance of the Commonwealth's first exception is directed largely to this Court's construction of Section 1103-C.1 of the Tax Code and the Department's related regulation—61 Pa. Code § 91.193(b)(24)(v). As it did in its brief on the merits, the Commonwealth contends that portions of the Ground Lease detailing how the parties will arrive at FMV rent on renewal are equivalent to a "method for calculating the rental charge," as described in Section 1103-C.1 of the Tax Code, or a "method for establishing the rental charge," as described in the Department's regulation, for the extension period. Because the Ground Lease includes such a "method" for calculating the rent for the extension period, the Commonwealth contends that the extension period must be included in the lease period, which would bring the lease period to greater than 30 years. Accordingly, the lease is subject to realty transfer tax.

Because the panel in *Saturday Family I* did not reach the same conclusion, the Commonwealth contends that the panel (a) failed to consider the language in Section 1103-C.1 of the Tax Code, focusing only on the final sentence in 61 Pa. Code § 91.193(b)(24)(v) (relating to lease extension); (b) should have relied on dictionary definitions of the term "method" and, had it done so, would have found that the procedures to arrive at FMV rent set forth in the Ground Lease constitute a "method" as that term is used in the statute and regulation; (c) erred in even concluding that the parties agreed to extend the lease at FMV rent because the parties are not free to negotiate; (d) inconsistently concluded that the Department's regulation was clear while at the same time applying the Statutory Construction

5

Act of 1972;[7] and (e) adopted a construction that defeats the purpose of the statutory provisions imposing the transfer tax.

The Commonwealth, here, presents largely the same issues and arguments that this Court addressed in our opinion in *Saturday Family I*. Having considered the Commonwealth's contentions and Taxpayers' responses, we confirm the panel's construction of *both* Section 1103-C.1 of the Tax Code and Section 91.193(b)(24)(v) of the Department's regulation for the reasons set forth in the panel's opinion. In response to particular points raised by the Commonwealth, we offer some additional analysis.

First, the panel in *Saturday Family I* fully considered all relevant provisions of the Tax Code and the Department's regulation in applying the clear language set forth in the Department's regulation. *Saturday Family I*, 148 A.3d at 934-35. In reality, the language of the Department's regulation largely tracks Section 1103-C.1 of the Tax Code, with the exception of the added language in the regulation dealing with extensions at FMV rent. The Court's interpretation in *Saturday Family I* is not inconsistent with the language in the Tax Code, unless of course the Department is suggesting that its own regulation, particularly the FMV language, is inconsistent with the Tax Code. The Department, however, does not make such an argument. The Department, therefore, is bound to follow *both* the statute and its regulation. *Popowsky v. Pa. Pub. Util. Comm'n*, 853 A.2d 1097, 1106-07 (Pa. Cmwlth. 2004) (en banc), *affirmed*, 910 A.2d 38 (Pa. 2006).

_____

[7] 1 Pa. C.S. §§ 1501-1991.

The truth is that this case would not be here (or at least not in this context) but for the Department's decision to include in its regulation the language dealing with renewals/extensions at the option of the lessee at fair rental value at the time of renewal/extension. That language is not in Section 1103-C.1 of the Tax Code. Nonetheless, as noted above, we do not have before us a legal challenge to the validity of the Department's regulation. The Department insists that the panel's decision deprives Section 1103-C.1 "of all meaning" and, therefore, is absurd. We disagree. Like the panel, we agree that the lease does not fix a future rental price; rather, the rental price will only be determined at the time of lease renewal and then at FMV. We do not interpret the language of the Ground Lease as establishing a "method" for calculating the rental charge for the extension period, regardless of how that term is defined. Rather, we, like the panel in *Saturday Family I*, interpret the Ground Lease as firmly establishing, consistent with the Department's regulation, that the lease may be extended at the option of the lessee for additional periods at a FMV rent.[8] FMV is not a "method"—it is a future, unknown, objective amount. Thus, the Court's construction is entirely consistent with the language in Section 1103-C.1 of the Tax Code.

Third, as for the remaining portions of Article 32 of the Ground Lease, we disagree that any provisions in the agreement *preclude* the parties from freely negotiating the FMV rent at the time of extension. Indeed, paragraph C of Article 32 clearly provides that FMV rent for the extension period will be

---

[8] We further construe the phrase "fair rental value at the time of the renewal or extension" in the Department's regulation, 61 Pa. Code § 91.193(b)(24)(v), as synonymous with the phrase "fair market value rent . . . at the time of such extension" on page 18 of the Ground Lease. The Commonwealth does not contend otherwise.

determined by the lessor and lessee "based on rents for similar parcels of land in Westmoreland County (*or if Tenant and Landlord are unable to agree,* determined by appraisal as set forth herein)." (Ground Lease, Stipulation of Parties at Ex. "A," p. 18) (emphasis added).) Accordingly, the Ground Lease expressly allows for negotiation—*i.e.*, agreement. The only restriction on the parties' ability to negotiate is that both parties must negotiate a FMV rent—meaning, one party cannot extract a higher (lessor) or lower (lessee) rent than the market, at the time of the lease extension, supports.

The regulation provides that the extended period will not be counted so long as the lease extension is (1) "at the option of the lessee" and (2) is "at fair rental value at the time of the renewal or extension." 61 Pa. Code § 91.193(b)(24)(v). The existence and enforcement of the FMV rent condition in the Department's regulation is critical for two reasons. First, the condition ensures, consistent with the Department's regulation, that the option to extend belongs to the *lessee.* Without the FMV condition, a lessor could demand an artificially high rent and effectively defeat a lessee's option. Second, the condition ensures that the lease extension as closely as possible approximates a *new* lease with a new lessee in the open market—*i.e.*, the existing long-term lessee derives no price benefit or advantage in the extension. A price benefit or advantage conferred upon the original lessee at extension/renewal looks less like an arms-length extension/renewal and more like a benefit conferred by and baked into the original lease term, strongly suggesting that the extension/renewal period should be included in the original lease term for realty transfer tax purposes.

The Department's argument assumes that a FMV rent is only that rent with which both parties agree at the time of renewal—*i.e.*, a rent that "they *can*

8

renegotiate . . . *unconditionally at the time of the extension*." (Commonwealth Exceptions Br. at 43 (emphasis in original).) The Department's regulation, however, providing that the rental at renewal/extension must be at FMV in order to exclude the additional lease period from the calculation of the term of the lease for realty transfer tax purposes, itself places a *condition* on the parties' negotiations. To avoid the tax consequence, the parties are *restrained* in their negotiations of the renewal rate. They are not free to set any agreed-to renewal rate. According to the Department's regulation, the rate *must be* a FMV rate if the parties wish to exclude the renewal/extension period from the original lease term for realty transfer tax purposes. If a father offers to sell his 2016 Mercedes C350 sedan to his son for $1 and his son agrees to purchase it at that price, their agreement alone does not represent a FMV for that vehicle. Likewise, if the parties to a 29-year, 11-month (and 3-day) lease agree to a 5-year extension at a rental rate of $12, that alone does not represent a FMV rate.

FMV is defined as "[t]he amount at which property *would* change hands between a *willing buyer* and a *willing seller*, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Black's Law Dictionary 597 (6th ed. 1990) (emphasis added). In other words, it is a *market* value—the value of the asset on the market. Usually, the actual price that parties negotiate would be a FMV price. *Id.* This is not always the case, however, as the Department is well aware. In its regulations dealing with the imposition of sales tax on vehicles, for example, the Department recognizes that the actual sales price negotiated between the parties *may not* represent the actual FMV of the vehicle. If that is the case, the Department will impose sales tax

9

not on the actual negotiated price but on the "prevailing market price of the vehicle," or FMV. 61 Pa. Code § 31.44(b).

In reality, parties sometimes cannot reach agreement on how much to pay for rent, let alone a FMV rent. Where, as here, there is a legal consequence to the FMV determination, parties should be free to include dispute resolution provisions within their agreement(s) in order to ensure that their respective rights and interests are protected. With respect to the Department's regulation and the imposition of the realty transfer tax, the term of the lease extension/renewal can only be excluded from the original lease term if the extension/renewal is at the option of the lessee and is at a FMV rent at the time of extension/renewal. The Department contends that the dispute resolution provisions in the Ground Lease require inclusion of the extension/renewal period in the original lease term when they actually are written to ensure that the conditions for *excluding* the renewal/extension periods set forth in the Department's regulation are satisfied. The processes set forth in Article 32 of the Ground Lease are entirely reasonable and consistent with how disputes over FMV are resolved in the real world. If the parties cannot agree, qualified real estate appraisers are retained. Any disputes that arise in the course of reaching a FMV rent are resolved either through arbitration or litigation.

If the Ground Lease did not include any of the provisions on which the Department fixates, a dispute could still arise at lease renewal over the rent for the renewal period. Taxpayers are permitted to resolve that dispute somewhere, if only to enforce their respective contractual rights. The dispute resolution provisions set forth in the Ground Lease are detailed, but from a practical and legal perspective our analysis would be no different if the Ground Lease provided only

10

that "disputes over fair rental value shall be resolved in the courts of common pleas." We would construe such contractual language, as we do the actual language in the Ground Lease, as providing for a method of dispute resolution, and not a "method for calculating the rental charge" under Section 1103-C.1 of the Tax Code and Section 91.193(b)(24)(v) of the Department's regulations.

Fourth, like the panel, we agree that the language in the Department's regulation is clear and unambiguous. The panel's decision in *Saturday Family I*, which we adopt and buttress herein, adheres to the clear and unambiguous language of the statute and the Department's regulation. Upon review of the panel's decision, we do not see any instance where the Court applied statutory construction principles in derogation of the same.

We now turn our attention to the Department's second exception, wherein the Department argues that the panel in *Saturday Family I* erred by not deferring to the Department's interpretation of Section 1103-C.1 of the Tax Code and Section 91.193(b)(24)(v) of the Department's regulations. We disagree. As the panel in *Saturday Family I* recognized, courts need not defer to an administrative agency's interpretation of its own regulation where that interpretation "is clearly erroneous or inconsistent with the regulation." *Saturday Family I*, 148 A.3d at 938 (quoting *Pa. State Police, Bureau of Liquor Control Enforcement v. Benny Enterprises, Inc.*, 669 A.2d 1018, 1021 (Pa. Cmwlth. 1995), *appeal denied*, 681 A.2d 1344 (Pa. 1996)); *see Popowsky*, 853 A.2d at 1106. As noted above and by the panel in *Saturday Family I*, the Department's regulation and Section 1103-C.1 of the Tax Code, read together, are unambiguous and, therefore, subject to only one reasonable interpretation.

The Department's interpretation is simply unreasonable. At page 43 of its brief in support of its exceptions, the Department contends that in order for a renewal period to be excluded from the term of the lease for transfer tax purposes, the lease must provide "only that the renewal or extension will be at true 'fair rental value' at the time of renewal or extension (free and open and without legally binding conditions)." As noted above, however, the requirement in the regulation that the renewal rent be at FMV is itself a legally binding condition that limits the parties' ability to agree to a rental price for the renewal period. If the Department truly wanted free and open negotiations, the regulation would have simply provided: "Renewals or extensions at the option of the lessee at <u>a price agreed to by the parties</u> ~~fair rental value~~ at the time of the renewal or extension are not included in determining the term of a lease."

Unfettered free and open negotiations would not serve the purpose of either the Tax Code[9] or the regulation, as explained above, because it could lead to mischief. Instead, the only reasonable interpretation of the language in the regulation is that in order to exclude any renewal/extension term from the original term of a lease, for purposes of avoiding realty transfer tax, any rental for the extension/renewal period *must be* at FMV and not, as the Department proffers, any price that the parties "freely and openly agree to without legally binding conditions." Such a condition ensures that the rent at renewal as closely as possible approximates what the lessor could have demanded on the open market had it simply executed a new lease with a new tenant. The Department's

---

[9] 72 P.S. §§ 7101-10004.

interpretation, then, is not reasonable and, instead, is inconsistent with the regulation. It, therefore, is not entitled to deference.

In addressing this matter, we note also that in addition to construing the Department's regulation and the Tax Code, the Court has also reviewed and interpreted the terms of the Ground Lease itself, particularly the terms identified by the Department in its exceptions. The Department clearly disagrees with the Court's interpretation and characterization of those terms as dispute resolution provisions. In response, we note that "[t]he function of contract interpretation and construction is a question of law peculiarly within the province of this Court." *Dep't of Transp. v. Mosites Constr. Co.*, 494 A.2d 41, 43 (Pa. Cmwlth. 1985).

Accordingly, we overrule the Commonwealth's exceptions to the Court's opinion and order in *Saturday Family I*, thereby confirming the Court's order of October 17, 2016.

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Saturday Family LP,                    :

            Petitioner     :

                    :

     v.              :   No. 781 F.R. 2013

                    :

Commonwealth of Pennsylvania,  :

            Respondent   :

Techspec Inc.,                    :

            Petitioner     :

                    :

     v.              :   No. 782 F.R. 2013

                    :

Commonwealth of Pennsylvania,  :

            Respondent   :

## O R D E R

AND NOW, this 14th day of August, 2017, the exceptions filed by Respondent Commonwealth of Pennsylvania to this Court's opinion and order in *Saturday Family LP v. Commonwealth of Pennsylvania*, 148 A.3d 941 (Pa. Cmwlth. 2016), are hereby OVERRULED. The order of the Board of Finance and Revenue in the above-captioned matter, dated September 25, 2013 (mailed on September 27, 2013), is REVERSED.

                         _____

                         P. KEVIN BROBSON, Judge