636 A.2d 1241

In re Condemnation by the Commonwealth of Pennsylvania Department of Transportation of Right of Way for Legislative Route 1876, section 003, a Limited Access Highway in Boro of White Oak.

In re Ann Jordan MARIVITZ and Herman Marivitz, H/H Cuddy DeMarco, Jr., Donald Jordan & Petronilla H. Jordan H/W.

Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1993.

Decided Jan. 6, 1994.

248

William J. Cressler, Asst. Chief Counsel, for appellant.

Thomas J. Dempsey, for appellees.

Before CRAIG, President Judge, McGINLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The Commonwealth of Pennsylvania, Department of Transportation (Department) appeals from an order of the Court of Common Pleas of Allegheny County sustaining Donald Jordan's and Petronilla Jordan's (Jordans) preliminary objections to a declaration of taking filed by the Department to acquire the fee title underlying the easement for highway purposes previously acquired by the Department in the subject property in White Oak, Allegheny County.

The Jordans are the owners of the underlying fee title in land whose easement for highway purposes had been condemned in the early 1970's at a time when the Department was only authorized to acquire easements when condemning land for highway purposes. One of the subject parcels had been condemned from the Jordans in 1971, and both had houses on them which were demolished following acquisition. Donald Jordan acquired the fee interest in the other property by purchasing it from the original owner in 1983 for $1,500.00. The contemplated highway cloverleaf was never constructed.

In 1979, pursuant to amendments to Section 2003 of The Administrative Code, the Department was given the power to acquire land in fee simple and "[t]he fee underlying any easement previously acquired by the department." It was also given the power to sell at public sale any land, "acquired by the department if the secretary determines that the land is not needed for present or future transportation purposes."[1]

In 1990, the Department filed a declaration of taking seeking to acquire the underlying fee with respect to the Jordans' property. The Jordans filed preliminary objections to challenge this declaration. They argued successfully before the

1. The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§ 513(e)(1), 513(e)(2)(iii), 513(e)(7).

trial court that the Department's condemnation of the underlying fee in the premises, for the purpose of rendering such property more readily alienable, was improper because it was not a condemnation for transportation purposes as is required by statute, nor was it a condemnation for a public purpose as is required by the federal and state constitutions. Furthermore, the trial court held that despite the holdings of *Miller v. Department of Transportation,* 91 Pa.Commonwealth Ct. 622, 498 A.2d 1370 (1985), and *McCullough v. Department of Transportation,* 134 Pa.Commonwealth Ct. 95, 578 A.2d 568 (1990), the Department's failure to use the property as originally intended constituted a *de facto* abandonment of the easement. We disagree.

The trial court held, and Appellee argues, that because the Department no longer intends to build a highway on the land and only intends to condemn the underlying fee in order to be able to sell the land, the condemnation is illegal under the relevant statutes and the case law. However, Section 2003(e)(2) of the Administrative Code grants the Department authority to acquire certain lands even if *not* needed for highways or other transportation facilities. It provides:

(2) In addition to land required for highways and other transportation facilities, the department may acquire:

(i) Landlocked parcels ...;

(ii) Land abutting a highway ...;

(iii) The fee underlying any easement previously acquired by the department. 71 P.S. § 503(e)(2).

No party disputes that the Department is authorized to take land for transportation purposes under 71 P.S. § 513(e)(1), and 71 P.S. § 513(e)(2)(iii) plainly authorizes the acquisition of the underlying fee of any previously acquired easement for other than transportation purposes. However, the trial court construed this latter subsection of the statute to mean that any taking of the fee underlying a previously acquired easement is only justified when undertaken for transportation purposes. It is an axiom of statutory construction that every statute shall be construed, if possible, to give affect to all its

provisions, and no words or phrases are to be treated as mere surplusage. 1 Pa.C.S. § 1921(a); *Patrick Media Group v. Department of Transportation*, 533 Pa. 188, 620 A.2d 1125 (1993). As the trial court's reading renders the introductory clause and indeed the entire subsection of the statute superfluous, we hold that the acquisition of the underlying fee need not be for transportation purposes. The *Miller* court came to this same conclusion, and we hold that *Miller* is dispositive on this issue, consistent with the plain language of the statute.

Related to the question of whether the Department need have a transportation purpose for acquiring an underlying fee, is the question of whether this condemnation is a taking for a public use.[2] While, the Department acknowledges that because there are no longer any plans to build the highway cloverleaf the land will not be used for any transportation-related purpose, it claims that a public purpose will still be served by such condemnation. The people of Pennsylvania previously invested significant public funds in compensating condemnees for the easement, and the public's investment in the land would be lost if the Commonwealth failed to condemn the underlying fee and consolidate the title for sale. At the same time, the condemnees who had previously been compensated for the taking, would receive a windfall. This, the Department claims, is in itself a public purpose, as required

---

**2.** The trial court held that Pa.R.C.P. No. 235, which requires that the Attorney General shall be notified if any Act of the General Assembly is alleged to be unconstitutional and the Commonwealth is not a party, was inapplicable here because the Jordans were not challenging the constitutionality of the statute itself, but merely its application under the present circumstances. Despite this disclaimer, the Jordans' challenge is indeed a challenge to the constitutionality of the statute itself which plainly states that the taking of the underlying fee need not be for highways or other transportation uses. In fact, the trial court explicitly held that the Department's position that it need not indicate any purpose for acquiring an underlying fee once it had acquired a right of way for highway purposes, subverted all notions of due process because it was not a taking for a public use. However, we are of the opinion that we still must address the constitutional issues here because, although the Attorney General was not notified, a Commonwealth department is a party to this action. *See Mark v. Commonwealth*, 135 Pa.Commonwealth Ct. 150, 580 A.2d 901 (1990).

under the federal and state constitutions.[3]

The trial court held that the acquisition of the fee for this purpose, "surely is not such a public purpose for which PennDOT may condemn private property. PennDOT is not in the real estate business, and it may not condemn private property to enhance its status as seller of real estate." (R. at 85a).

Prior to 1979, the Department could only condemn an easement for highway purposes in properties actually required for construction of state highways. *Bernstein Appeal,* 112 Pa.Commonwealth Ct. 368, 535 A.2d 1210 (1988) (alloc. denied). This estate in land taken by the Department was unknown to the common law, and was sometimes called an easement and other times a base or conditional fee.[4] *Brookbank v. Benedum–Trees Oil Co.,* 389 Pa. 151, 131 A.2d 103 (1957).

Although the exact nature of such estates in land is difficult to pinpoint, the interest, while not a fee, is not a mere easement or right of way. It is more. It is the right to the actual and exclusive possession of the property at all times and for all purposes, and includes the right to build on the land, fence it in, and exclude other uses. It is comparable to a fee in the surface and so much beneath as may be necessary for support. This estate, taken from an owner under the right of eminent domain, has no further practical value to the owner in view of the rights of the state in it, unless the easement is formally abandoned. *Brown v. Title Guaranty & Surety Co.,* 232 Pa. 337, 81 A. 410 (1911); *Reed v. Allegheny County,* 330 Pa. 300, 199 A. 187 (1938). Therefore, as the Department asserts, it compensates an owner of a highway easement it has taken by eminent domain as if it were acquiring fee simple title and makes a substantial investment of public moneys. If,

---

3. PA. CONST., Art. I, § 10; U.S. CONST. amend. V.

4. Although much of this discussion derives from cases concerning railroad rights of way, the rights in the land acquired for a railroad easement are very similar to those acquired in an easement for highway purposes. *See Miller,* where reference is made to railroad cases to support the argument on abandonment of a highway easement.

thereafter, the land is not developed for transportation purpose, the Department is authorized to sell off that land. 71 P.S. § 513(e)(7).

This sale, however, in practice, would be impossible if the Department were not able to acquire the underlying fee, and the land might remain essentially dormant and unproductive, unless formally abandoned by the Department. This was the state of affairs as regards the subject property until the Department filed a declaration of taking of the fee interest underlying the easement in 1990. 71 P.S. § 513(e)(2)(iii).

The legislative determination that the Department may acquire the fee interest underlying an easement for highway purposes, although not conclusive, is entitled not only to great deference but to prima facie acceptance of its correctness. *See Johnson v. Housing Finance Agency,* 453 Pa. 329, 309 A.2d 528 (1973). Furthermore, a foresighted concern for avoiding waste of public funds can properly be the major motive for the exercise of the state's exercise of its right to take by eminent domain. *Pittsburgh School District Condemnation Case,* 430 Pa. 566, 244 A.2d 42 (1968). Therefore, the determination that the protection of the public's investment in the land is a legitimate public purpose must be accorded great deference.

As the Supreme Court has held, "There is of course, a role for courts to play in reviewing a legislature's judgment of what constitutes a public use, ... but it is 'an extremely narrow one'." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 240, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984) *citing, Berman v. Parker,* 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954) (in *Hawaii* the Court upheld legislation which condemned the real property of certain lessors and transferred it to lessees in order to reduce the concentration of land in the hands of a few individuals).

Moreover, the definition of the terms "public use" has been left, as indeed it must, to the varying circumstances and situations in which it arises, depending on the social and economic background and the changing conceptions of the

scope and functions of government. *Dornan v. Philadelphia Housing Authority*, 331 Pa. 209, 200 A. 834 (1938).

Therefore, given the broad definition of public use, the narrow role for the courts in determining whether the legislative judgment as to what constitutes a public use is valid, and the Department's purpose to protect the public's substantial investment in easements previously taken and avoid windfall profits to those individuals already compensated for the value of their property, we hold that the Department's condemnation of the Jordans' underlying fee was a valid condemnation for a public use.

■ Finally we must consider, as the trial court concluded, whether the Commonwealth's decision not to build a highway cloverleaf and its non-use of the easement for highway purposes for a long period of time constituted a *de facto* abandonment of the property. We hold that *Miller* and *McCullough* are directly on point and controlling here.

In *McCullough* we stated that *Miller*, "set forth the law with the regard to the abandonment of property by the Department." *McCullough*, at 99, 578 A.2d at 570. It is:

> In order for an abandonment to have occurred, there must be an intention to abandon, together with external acts by which that intention is carried into effect. Mere non-use of the right of way, though continued for a long period of years, does not amount to an abandonment. For purposes of a highway easement, the "external act" of abandonment is the formal vacation of the easement in the manner required by law.

*Miller*, 91 Pa.Cmwlth. at 629, 498 A.2d at 1374 (citations omitted).

The Jordans do not allege that the Department formally vacated the easement in their land, and in fact the trial court held that the Department's abandonment occurred *de facto* by its decision not to build the cloverleaf as originally planned and a long period of non-usage. The trial court may not ignore the controlling case law to find that the Department abandoned its rights in the property absent the only recognized external act of abandonment of a highway easement, the

formal vacation of the easement in the manner required by law. *Bernstein Appeal.* Therefore, we hold that an abandonment of the easement did not occur because the Department never formally vacated the easement.

Accordingly, we conclude that the Department's declaration of the taking of the underlying fee was valid, and we reverse the order sustaining the Jordans' preliminary objections and remand this case for further proceedings consistent with the foregoing opinion.

## *ORDER*

AND NOW, this 6th day of January, 1994, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter sustaining the condemnees' preliminary objections is reversed and the case is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.